UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

F I L E D

FEB 2 1 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 07 CR 50072-02 |
| vs. | ) | Judge Frederick J. Kapala |
| | ) | |
| FRANK G. ANAST | ) | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant FRANK G. ANAST, and his attorney, PAUL E. GAZIANO, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343, and interstate carrier fraud, in violation of Title 18, United States Code, Section 1341.

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## **Charge to Which Defendant is Pleading Guilty**

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty

to Count One of the indictment.  Count One charges defendant with wire fraud.

## **Factual Basis**

6.      Defendant will plead guilty because he is in fact guilty of the charge contained

in Count One of the indictment.  In pleading guilty, defendant admits the following facts and

that those facts establish his guilt beyond a reasonable doubt:

During 2002 through 2004, defendant was self-employed doing computer work.  In

2002, co-defendant Fuchs was a loan officer at a mortgage brokerage business known as

Mortgage Solutions.  Mortgage Solutions was located at 2222 East State Street in Rockford.

Within Mortgage Solutions, Fuchs operated his own office, which was sometimes referred

to as the "Mike Fox Division."  Fuchs employed individuals who worked directly for him.

The "Mike Fox Division" was located on the second floor of the building at 2222 East State

Street.  Sometime in 2002, Fuchs hired defendant to do some computer work for his office,

such as setting up a local network and a web application database.

A short time after Fuchs hired defendant to do computer work, Fuchs asked defendant

to create fictitious pay stubs (or earnings statements) and IRS Forms W-2.  Eventually,

defendant accepted Fuchs' invitation to make false employment documents.

The information to be included on the false pay stubs and false W-2s was always

supplied to defendant by either Fuchs or one of his employees.  This information included:

2

the name, address, and social security number of the borrower; the name and address of the employer to be used; and the amount of wages that Fuchs' wanted to show for the borrower.

Occasionally, Fuchs asked defendant to create pay stubs and W-2s showing that a borrower was employed at "Midwest Computer Systems." Midwest Computer Systems was a defunct business which defendant had previously owned and operated.

Defendant prepared the false W-2s on his computer. Defendant inputted the information provided by Fuchs and his employees into a template and then printed the documents into a W-2 format.

Defendant also prepared the false pay stubs (or earnings statements) on his computer. If the borrower was actually employed at that business, and Fuchs had hired defendant to simply inflate the borrower's wages, defendant attempted to create a pay stub (or earnings statement) that was similar in form to the documents the borrower actually receive from his or her employer. If the borrower was not employed at the business whose name was to be used, defendant simply created a format for the pay stubs (or earnings statements).

From 2002 through June of 2004, defendant created approximately 23 sets of false pay stubs and false W-2s for Fuchs. Fuchs paid defendant $50 or $100 for each set of false documents.

Defendant admits that he knew that Fuchs and his employees were using the false W-2s and false pay stubs to deceive commercial lenders and to get unqualified borrowers qualified for loans. Specifically, defendant admits that he knew that Fuchs and his

3

employees where sending the false W-2s and pay stubs to commercial lenders for the purpose of deceiving those lenders about the prospective borrowers' income.

In furtherance of the scheme, defendant and Fuchs caused false documents to be sent to USA Funding, Inc., in support of a loan application for an individual referred to herein as "Buyer A," including: (1) a loan application which falsely stated that "Buyer A" had been employed by a business referred to herein as "Company A" for 4.5 years; (2) a false 2001 W-2 for "Buyer A" from "Company A"; (3) copies of "Buyer A's" purported pay stubs from "Company A"; and (4) a Verification of Employment form, purportedly signed by the owner of "Company A," which falsely stated that "Buyer A" had earned $31,280 in 2001 and $29,440 through Nov. of 2002.

On or about December 20, 2002, defendant and Fuchs knowingly caused to be transmitted by means of a wire communication in interstate commerce from Michigan City, Indiana, to Rockford, in the Northern District of Illinois, Western Division, certain signals, namely a bank transfer in the amount of $111,939.20 for a loan to "Buyer A," who was purchasing a property located on Cheney Drive in South Beloit, Illinois, which funds were deposited into Rock River Title Company/Chicago Title Agency of Rockford's account at Amcore Bank in Rockford, Illinois.

7.    The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a

4

complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 20 years' imprisonment.  This offense also carries a maximum fine of $250,000.  Defendant further understands that the judge also may impose a term of supervised release of not more than three years, or a term of probation of up to five years.

b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guideline Manual.

b.     **Offense Level Calculations.**

i.     The base offense level for the charge in Count One of the indictment is 7, pursuant to Guideline §2B1.1(a)(1).

ii.     The offense level must be increased by 6 levels, pursuant to Guideline §2B1.1(b)(1)(D), because the estimated anticipated loss caused to the commercial lenders by defendant's offense exceeds $30,000.

iii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the U.S. Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

6

iv.     In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.l(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, based on the facts known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.     **Anticipated Advisory Sentencing Guidelines Range.**  Therefore, based on the facts now known to the government, the anticipated offense level is 11, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 8 to 14 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.     Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or

7

additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.      Both parties expressly acknowledge that this plea agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

11.     Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District

8

of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant

agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1, to depart downward from the applicable Guideline range. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. The government will make no recommendation regarding the sentence to be imposed.

13.    If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence pursuant to the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

14.    Regarding restitution, the parties acknowledge that the total amount of restitution owed to the victim lenders is $69,037, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

15.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order payable to the Clerk of the U.S. District Court.

16.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

## Presentence Investigation Report/Post-Sentence Supervision

17.     Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

18.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer.   Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of

11

his sentence for obstruction of justice under Guideline §3C1.l, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

19.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the United States Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

20.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in the present case.

21.    This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or

12

cause of action it may have against defendant or any other person or entity. The obligations

of this Agreement are limited to the United States Attorney's Office for the Northern District

of Illinois and cannot bind any other federal, state or local prosecuting, administrative or

regulatory authorities, except as expressly set forth in this Agreement. Defendant

understands that nothing in this Plea Agreement shall limit the Internal Revenue Service

(IRS) in its collection of any taxes, interest or penalties from defendant.

### Waiver of Rights

22.    Defendant understands that by pleading guilty he surrenders certain rights,

including the following:

a.    **Trial rights.** Defendant has the right to persist in a plea of not guilty

to the charges against him, and if he does, he would have the right to a public and speedy

trial.

i.    The trial could be either a jury trial or a trial by the judge sitting

without a jury. Defendant has a right to a jury trial. However, in order that the trial be

conducted by the judge sitting without a jury, defendant, the government, and the judge all

must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve

citizens from the district, selected at random. Defendant and his attorney would participate

in choosing the jury by requesting that the Court remove prospective jurors for cause where

13

actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.  The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.  Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf.  If the witnesses for defendant would not appear voluntarily, he could

14

require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

> vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

> b.     **Waiver of appellate and collateral rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction and any part of the sentence, including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, or the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

15

      c.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant understands that he has the right to have the criminal charges in the indictment brought within five years of the last of the alleged acts constituting the specified violations. By signing this document, defendant knowingly waives any right to have the charges in the indictment brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charges in the indictment were brought.

23.     By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

## Other Terms

24.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

16

## Conclusion

25.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

26.    Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to re-sentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27.    Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

17

28.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

29.    Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _February 21, 2008_


PATRICK J. FITZGERALD
United States Attorney



FRANK G. ANAST
Defendant



SCOTT A. VERSEMAN
Assistant United States Attorney
308 West State Street – Room 300
Rockford, Illinois 61101
815-987-4444



PAUL E. GAZIANO
Attorney for Defendant
202 West State Street – Suite 600
Rockford, Illinois 61101
815-961-0800